UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

CORTEZ BUFFORD, )
)
    Plaintiff, )
)
v. )
) No.:  4:15-CV-00460-TCM
NATHANIEL L. BURKEMPER, )
)
MONROE JENKINS, IV, ) **PLAINTIFF DEMANDS**
) **JURY TRIAL**
NIJAUH WOODARD, and )
)
KELLY SWINTON. )
)
    Defendants. )

**SECOND AMENDED COMPLAINT  -  CIVIL RIGHTS – 42 U.S.C. 1983
EXCESSIVE FORCE, UNLAWFUL SEIZURE**

Comes now Cortez Bufford, by counsel W. Bevis Schock and Joel J. Schwartz, and states for his Second Amended Complaint:

**PRELIMINARY ALLEGATIONS**

**Parties**

1. Plaintiff Cortez Bufford is an individual residing in the City of St. Louis, Missouri.

2. Defendants Nathaniel L. Burkemper, Monroe Jenkins, IV, Nijauh Woodard and Kelly Swinton are all individuals.  All are properly licensed police officers and all are employed by the City of St. Louis Metropolitan Police Department.

3. Bufford sues each Defendant in his or her individual capacity only.

**Venue**

4. The events complained of occurred in the City of St. Louis.

**Color of State Law**

5. At all relevant times all Defendants were acting under color of state law. Particularly, at all relevant times all Defendants acted under color of the laws, statutes, ordinances, regulations, policies, customs and usages of the State of Missouri, and its political subdivisions.

**Jury Demand**

6. Bufford demands a jury trial.

**FACTS**

7. On April 10, 2014 Bufford was driving eastbound on Lafayette Avenue at approximately 14th Street in the City of St. Louis.

8. Bufford was driving at or very near the speed limit, and at a normal safe speed for the conditions.

9. Bufford made a legal U-Turn.

10. Burkemper was on-duty, driving his patrol car, and in the vicinity of Bufford's car.

11. Burkemper activated his emergency lights and pulled over Bufford.

12. After the activation of the lights a dashboard camera video system began recording.

13. The dashboard camera video system recorded retroactive to 30 seconds before the activation of the emergency lights.

14. Burkemper had no articulable suspicion of criminal activity to justify pulling over Bufford's car.

15. Burkemper had no constitutional reason to justify pulling over Bufford's car.

16. Burkemper walked to Bufford's driver's side window.

17. Burkemper began a conversation with Bufford, including asking for identification.

18. Bufford had no warrants for his arrest.

19. The conversation became moderately heated.

20. Burkemper demanded several times that Bufford exit the vehicle.

21. Bufford did not exit the vehicle but instead orally:

    a. Protested the stop,

    b. Demanded a reason for being detained, and

    c. Protested being required to exit the vehicle.

22. At no time did Bufford engage in active resistance, such as by engaging in physical contact with Burkemper or by screaming.

23. At all times Bufford kept his car window open.

24. After approximately four minutes of conversation Burkemper, with the assistance of another officer, Jessica Meyer, who is not a Defendant, opened the driver's side door of Bufford's car and forcefully pulled Bufford from the vehicle.

25. Burkemper and that other Officer took Bufford face down to the ground by an "arm bar" technique.

26. After Bufford was on the ground Burkemper and the other Officer continued to use force to restrain Bufford.

27. Burkemper had no constitutional reason to use any force whatsoever to remove Bufford from the vehicle.

28. The only reason Burkemper pulled Bufford from the vehicle was that Bufford opposed Burkemper's demand to exit the vehicle voluntarily.

29. Other police officers were arriving.

30. Eventually there were a total of 9 officers at the scene.

31. Defendant Jenkins:

    a.    Kicked Bufford,

    b.    Stomped on Bufford, and

    c.    Tased Bufford in drive stun mode.

32. Woodard kicked Bufford twice.

33. There was no constitutionally reasonable reason for:

    a.    Jenkins to have kicked Bufford, stomped on Bufford or tased Bufford in drive stun mode, or for

    b.    Woodard to have kicked Bufford.

34. After the officers subdued Bufford, and after the camera stopped recording, the officers realized that Bufford:

    a.    Had a gun on his person, and

    b.    Was not old enough to have that gun in his possession.

35. After the officers determined that Bufford had a gun on his person and was not old enough to have that gun, the officers had lawful authority to detain and arrest Bufford.

36. Bufford was arrested and taken to the station.

37. Bufford bonded out within a reasonable time thereafter.

38. The State of Missouri charged Bufford with various crimes but the Circuit Attorney dismissed all the charges.

### Allegations Specific to Defendant Kelly Swinton

39. Defendant Swinton was present at the scene starting (according to the time on the video tape at 10:14:17, (22:14:17 military time).

40. Approximately five seconds later at 10:14:22 Burkemper took Plaintiff to the ground.

41. The beating and kicking of Plaintiff began soon thereafter.

42. At 10:16:11, approximately one minute and forty-nine seconds later Swinton stated:

> Hold up
> Hold up, y'all
> Hold up
> Hold up
> Everybody hold up
> We're red right now
> So if you guys are worried about cameras just wait.

43. On information and belief during the one minute and forty-nine seconds gap Swinton:

    a. Was aware that the beating and kicking of Bufford was on-going.

    b. Had realistic opportunities to stop the beating and kicking of Bufford.

    c. Made no effort to intervene and stop the beating of Bufford.

## NATURE OF RETALIATION

44. Arrest, time in jail, and criminal prosecution, are the kinds of events which would deter a person of ordinary firmness from the exercise of First Amendment rights to free speech, including the exercise of speech by making statements of the sort made by Bufford.

## DAMAGES

45. During the incident and since the incident Bufford suffered and has suffered:

    a. Pain,

    b. Injuries,

    c. Humiliation,

    d. Indignity,

    e. Disgrace,

    f. Stress,

    g. Fear,

    h. Mental suffering, and

    i. Fear of police.

5

46. Since the incident Bufford has suffered garden variety psychological injuries.

47. During the incident Bufford suffered two injuries to his skin on his back where he was tased in drive stun mode.

48. Bufford carries life time scars at those locations on his back.

49. As a result of Burkemper's show of authority by stopping Bufford's car, Bufford suffered interference with freedom of movement, inconvenience, loss of time, and anxiety.

50. Before the incident Bufford had suffered an injury to his lower left arm and/or his fingers, and at the time of the incident Bufford was therefore wearing a soft cast.  During the beating Bufford suffered exaggerated pain to his left arm and fingers.

51. During the incident Bufford suffered abrasions to his fingers, face, back, head, ears and neck.

52. Bufford incurred medical bills in the amount of $6,439.32.

## CAUSATION

53. The conduct of Defendants and each of them proximately caused Bufford's damages.

## ATTORNEY'S FEES AND COSTS

54. In pursuit of his claim Bufford is incurring reasonable attorney's fees, taxable costs, and non-taxable costs.

## PUNITIVE DAMAGES

55. The conduct of the Defendants and each of them was malicious or recklessly indifferent to Bufford's rights.[1]

## JOINT AND SEVERAL LIABILITY

56. All the Defendants are jointly and severally liable for the damages to Bufford.

---

[1] Eighth Circuit Model Jury Instructions, 4.50C.

6

## COUNT I
## VIOLATION OF CIVIL RIGHTS, 42 U.S.C. §1983
## FOURTH AMENDMENT – UNLAWFUL SEIZURE
## AGAINST DEFENDANT BURKEMPER

57. Bufford incorporates all prior paragraphs.

58. Once Burkemper had activated his emergency lights a reasonable person in the position of Bufford would not have believed he was free to leave.[2]

59. The Fourth Amendment to the United States Constitution prohibits seizures of free citizens, including car stops,[3] without an articulable suspicion that a crime has occurred and that the subject committed it.

60. When Burkemper pulled over Bufford's car Burkemper had no such articulable suspicion.[4]

61. Both the stop itself and the continuation of the stop were unreasonable in length and scope.[5]

62. After the initial stop of the car the continuation of the seizure of Bufford's person until the officers became aware of the gun was an unconstitutional seizure of his person.

WHEREFORE, Plaintiff Cortez Bufford prays for judgment for compensatory damages and punitive damages under 42 U.S.C. 1983 against Defendant Nathaniel Burkemper for Unlawful Seizure of Bufford's Person, for attorney's fees and costs under 42 U.S.C. 1988, and for such other relief as the court finds to be just, meet and reasonable.

## COUNT II
## VIOLATION OF CIVIL RIGHTS, 42 U.S.C. §1983
## FOURTH AMENDMENT –
## RETALIATION FOR EXERCISE OF FIRST AMENDMENT RIGHTS

---

[2] *California v. Hodari D.,* 499 U.S. 621 (1991)
[3] *Delaware v. Prouse,* 440 U.S. 648 (1979)
[4] *Terry v. Ohio*, 392 U.S. 1 (1968)
[5] *U.S. v. Sharpe*, 470 U.S. 675 (1985)

**AGAINST DEFENDANT BURKEMPER**

63. Bufford incorporates all prior paragraphs.

64. When Burkemper forcefully removed Bufford from his vehicle Burkemper was retaliating against Bufford for exercising his First Amendment rights to oppose what was an illegal stop in the first place.[6]

**PRAYER**

WHEREFORE, Plaintiff Cortez Bufford prays for judgment for compensatory damages and punitive damages under 42 U.S.C. 1983 against Defendant Nathaniel Burkemper for Retaliation for Exercise of First Amendment Rights, for attorney's fees and costs under 42 U.S.C. 1988, and for such other relief as the court finds to be just, meet and reasonable.

**COUNT III**
**VIOLATION OF CIVIL RIGHTS, 42 U.S.C. §1983**
**FOURTH AMENDMENT - EXCESSIVE FORCE**
**AGAINST DEFENDANTS BURKEMPER, JENKINS AND WOODARD**

65. Bufford incorporates all prior paragraphs.

66. The Fourth Amendment to the United States Constitution prohibits use of excessive force during arrest.[7]

67. When officers have no cause whatsoever to stop a person, any use of force on that person is unconstitutional.[8]

68. Defendant Burkemper's use of force:

    a. To remove Bufford from the vehicle,

---

[6] *Hartman v. Moore*, 547 U.S. 250 (2006), *Abrams v. Walker*, 307 F.3d. 650, 654 (7th Cir. 2002) (abrogated on other grounds *Spiegla v. Hull*, 371 F.3d 938, (7th Cir. 2004), *Garcia v. City of Trenton*, 348 F.3d 726, 728 (8th Cir. 2003).
[7] *Graham v. Connor,* 490 U.S. 386, 388 (1989)
[8] One may contrast *Wertish v. Krueger*, 433 F.3d 1062, 1066-67 (8th Cir. 2006) where the court allowed use of force to remove the driver from a vehicle after a lawful stop.

    b.      To push Bufford to the ground, and

    c.      To restrain Bufford on the ground,

All constituted unconstitutional use of excessive force and so violated the United States Constitution.

69.    Defendant Jenkins's tasing of Bufford, kicking of Bufford, and stomping on Bufford's head, and Defendant Woodard's kicking of Bufford constituted unconstitutional use of excessive force and so violated the United States Constitution.

WHEREFORE, Plaintiff Cortez Bufford prays for judgment for compensatory damages and punitive damages under 42 U.S.C. 1983 against Defendants Nathaniel Burkemper, Monroe Jenkins, IV and Nijauh Woodard and each of them for Retaliation for Excessive Force, for attorney's fees and costs under 42 U.S.C. 1988, and for such other relief as the court finds to be just, meet and reasonable.

## COUNT IV
## VIOLATION OF CIVIL RIGHTS, 42 U.S.C. §1983
## FOURTH AMENDMENT – FAILURE TO INTERVENE
## AGAINST DEFENDANT SWINTON

70.    Bufford incorporates all prior paragraphs.

71.    One who is given the badge of authority of a police officer may not ignore the duty imposed by his office by failing to act to prevent the use of excessive force.[9]

72.    Defendant Swinton's failure to intervene to stop the beating and kicking of Bufford caused and/or contributed to the violation of Bufford's civil rights under the Fourth and Fourteenth Amendments and 42 U.S.C. 1983, particularly, his rights in the alternative:

    a.      To be safe from the unreasonable use of force, and

---

[9] ***Nance v. Sammis***, **586 F.3d. 604. 611-612 (8th Cir. 2009),** ***Krout v. Goemmer***, **583 F.3d. 557, 565 (8th Cir. 2009),** ***Putnam v. Gerloff***, **639 F.2d 415, 423 (8th Cir. 1981).**

   b. To be safe from the use of excessive force.

73. Swinton's failure to intervene violated the United States Constitution.

  WHEREFORE, Plaintiff Cortez Bufford prays for judgment for compensatory damages and punitive damages under 42 U.S.C. 1983 against Defendant Kelly Swinton for Failure to Intervene, for attorney's fees and costs under 42 U.S.C. 1988, and for such other relief as the court finds to be just, meet and reasonable.

Respectfully Submitted,

Co-Counsel for Plaintiff

 /s/ W. Bevis Schock .
W. Bevis Schock, 32551MO
Attorney at Law
7777 Bonhomme Ave., Ste. 1300
St. Louis, MO  63105
wbschock@schocklaw.com
Fax: 314-721-1698
Voice: 314-726-2322


 /s/ Joel Schwartz .
Joel J. Schwartz, 39066MO
Rosenblum, Schwartz, Rogers and Glass
120 S. Central, Ste. 130
St. Louis, MO  53105
Fax: 314-862-8050
Voice: 314-862-4332

CERTIFICATE OF SERVICE

The undersigned certifies that on September 10, 2015 (s)he served this document on:
All counsel of record
 /s/ W. Bevis Schock .
The service method was:  electronic filing.